No. 46,800

STATE OF KANSAS, *Appellee,* v. DON ULRIKSEN, *Appellant.*

(504 P. 2d 232)

Opinion filed December 9, 1972.

*Robert L. Bishop,* of Janicke, Herlocker and Bishop, of Winfield, argued the cause, and was on the brief for the appellant.

Appellee did not appear and submitted no brief.

The opinion of the court was delivered by

SCHROEDER, J.: This is an appeal in a criminal action from a conviction of felony theft (K. S. A. 1971 Supp. 21-3701). The appellant was found guilty by a jury in the district court of Cowley

County, Kansas, and was thereafter sentenced to a term of confinement of not less than one nor more than ten years.

Bird's drug store located in Winfield, Kansas, was broken into sometime during the late night hours of August 30, 1971, or the early morning hours of August 31, 1971. Testimony established that at least nine Timex watches, 20 to 30 cartons of cigarettes, and a large quantity of commercial drugs were taken from the store.

Entry to the building was gained by breaking out a second floor window. The first floor was entered from the second floor by cutting a hole in the ceiling. No evidence was found at the scene which could be used to identify the persons breaking and entering the building.

On September 7, 1971, New Mexico State Police Trooper Mike Fishburn stopped a 1966 Ford automobile in which he observed three persons. The three occupants of the vehicle were Don Ulriksen (defendant-appellant), his brother, Noel Ulriksen and the owner of the vehicle, Gene Brown. When the officer stopped the vehicle the appellant was driving and Brown was sitting on the passenger side of the front seat. The appellant's brother was lying down asleep in the back seat.

The officer testified he stopped the car to investigate whether it had been stolen. He was alerted because the lock cylinder was knocked out of the trunk. This commonly indicates the method used by a thief to make entry into a vehicle which he has stolen. Upon stopping the vehicle the officer approached the appellant and requested to see his driver's license and registration papers. The appellant presented his driver's license and Mr. Brown presented the vehicle registration. The officer also asked the appellant if he had any guns, liquor, knives, or narcotics in the car. The appellant responded no to the question, although the officer could see a bottle of liquor at the feet of Mr. Brown. He thereupon asked the appellant for permission to search the car which the appellant granted. The officer then asked the appellant if he would "please get out of the car and open up the trunk". The appellant complied with the request. The officer observed a gray suitcase in the trunk and asked the appellant who the owner was. The appellant answered, "It's mine." When the officer requested the appellant to open the suitcase, the appellant denied ownership of it. The officer then walked around the vehicle and asked Mr. Brown if he could search the car and anything in it to which

Brown replied, "Yes, you can." The officer then walked back to the rear of the car and opened the suitcase in which there was a brown bag. He opened the bag and discovered that it contained bottles filled with pills. The officer thereupon arrested the three occupants of the vehicle, read to them their constitutional rights, handcuffed them, and continued his search of the suitcase and trunk area.

The officer discovered three Timex watches, fifteen cartons of cigarettes and various bottles of pills and drugs. The officer testified that at least one bottle said "Bird's Rexall Drugs" on the label.

The appellant contends the trial court erred in overruling his pretrial motion to suppress evidence because it was obtained through an unlawful search and seizure. The appellant contends the search was conducted without a warrant, prior to a valid arrest, without probable cause, without advising the appellant of his rights and without valid consent.

The state does not contend the search was made with a warrant nor incident to a valid arrest. The state does contend the search was made with the valid consent of both the driver of the vehicle and the owner of the vehicle. It is a settled rule of law in both the federal and state courts that the constitutional immunity from unreasonable searches and seizures may be waived by a consent to a search or seizure. (*State v. Boyle*, 207 Kan. 833, 486 P. 2d 849 and cases cited therein.)

The appellant argues the consent to the search was invalid and was not freely given because the officer's assertion of his lawful authority was coercive. The appellant relies upon *Bumper v. North Carolina*, 391 U. S. 543, 20 L. Ed. 2d 797, 88 S. Ct. 1788, to support this point.

In *Bumper*, the United States Supreme Court reversed a North Carolina decision in which the defendant was convicted of rape and two counts of felonious assault. The admission into evidence of a rifle seized during a search of the defendant's home, which was owned by his grandmother, was held to be constitutional error where the defendant's grandmother consented to the search only after one of the police officers conducting the search had announced to her that he possessed a warrant for the search. There consent to the search was obviously given in acquiescence to the police officer who stated under color of his lawful authority that he possessed a search warrant. This was said to be implied coercion.

In the case at bar there was no such implied coercion. Here the officer did not assert he possessed a search warrant, nor did he threaten the appellant if he were not allowed to search the vehicle. It is clear from the record the officer merely requested permission to search the vehicle and the permission was given promptly, freely, unequivocally and without objection. It should be noted the only testimony at trial pertaining to the search and seizure in question was given by Officer Fishburn, as the appellant chose not to testify.

The appellant next contends the search and seizure were made without advising him of the rights guaranteed to each citizen by the 4th, 5th, 6th, and 14th Amendments to the Constitution of the United States. To be more specific, he complains that he was not given the Miranda warning before permission was requested to search the automobile he was driving.

This court has consistently adhered to the rule that the validity of a consent to the search of private premises does not depend on the owner's having first been given the warning delineated in *Miranda v. Arizona*, 384 U. S. 436, 16 L. Ed. 2d 694, 86 S. Ct. 1602. (*State v. Stein*, 203 Kan. 638, 456 P. 2d 1 and cases cited therein.)

The trial court properly overruled the appellant's motion to suppress the evidence obtained in the search.

The appellant contends he was not advised of his right to counsel nor was he afforded counsel at his appearance before a judge in New Mexico where he waived extradition proceedings.

Both New Mexico and Kansas have enacted the Uniform Criminal Extradition Act. K. S. A. 1971 Supp. 22-2710, with reference to extradition provides in pertinent part,

"No person arrested upon such warrant shall be delivered over to the agent . . . unless he shall first be taken forthwith before a judge . . . who shall inform him . . . that he has the right to demand and procure legal counsel. . . ."

A review of the record indicates all procedural aspects of the appellant's extradition proceedings in the probate court of Torrance County, New Mexico, were in compliance with the pertinent statutory provisions, with the exception of the provision that the accused shall be informed of his right to demand and procure legal counsel. It cannot be determined from the record whether the appellant was informed of his right to counsel because the record is entirely silent on the subject.

Assuming, without deciding, the appellant was not informed of

his right to counsel, this fact does not entitle the appellant to relief. Here the appellant does not claim he was denied due process of law. The appellant says in his brief:

". . . It seems to be settled that failure to provide counsel at extradition proceedings is not a denial of due process of law. . . ."

There is a more basic reason why the appellant must be denied relief. It is established that the jurisdiction of a district court in Kansas to try a person for a criminal offense does not depend on how he came to be in the state. (*State v. Wellman,* 102 Kan. 503, 170 Pac. 1052; *Stebens v. Hand,* 182 Kan. 304, 320 P. 2d 790; *Converse v. Hand,* 185 Kan. 112, 340 P. 2d 874; *Smith v. State,* 196 Kan. 438, 411 P. 2d 663; *Thompson v. State,* 197 Kan. 630, 419 P. 2d 891; *State v. Eaton,* 199 Kan. 610, 433 P. 2d 347; *Yurk & Brady v. Brunk,* 202 Kan. 755, 451 P. 2d 230; and *Bruffett v. State,* 205 Kan. 863, 472 P. 2d 206.)

The appellant contends the trial court erred in overruling his motion to dismiss the charges against him because he was not afforded a preliminary hearing within ten days of his arrest as required by K. S. A. 1971 Supp. 22-2902.

The record discloses the appellant first appeared before the city court of Winfield, Kansas, on September 13, 1971, at which time the case was continued to September 20, 1971. This continuance was at the appellant's request to enable him to obtain counsel of his own choosing. On September 14, 1971, the appellant appeared before the court again, this time with retained counsel. He appeared again on September 20, 1971, in person and by counsel. At this appearance, the preliminary hearing was set for September 28, 1971, *by agreement.* On that day the state for good cause shown requested a continuance in order to locate an unavailable witness. Over objection the continuance was granted, and the preliminary hearing was not conducted until October 5, 1971.

In *State v. Winter,* 203 Kan. 458, 454 P. 2d 491, this court dealt with a contention similar to that now advanced by the appellant:

"The district court specifically found that the continuance to February 28, was granted at the request of Mr. Parmiter on behalf of the appellant and for his sole and exclusive benefit. There was no allegation the delay was unreasonable or unnecessary, or resulted in the denial of a fair trial, hence, the claim is without merit." (p. 460.)

It should be noted that the provisions of K. S. A. 1971 Supp. 22-2902 are similar to those dealt with in *State v. Winter,* supra. Here the appellant first requested a seven day continuance to retain coun-

sel and, after the expiration of that seven day continuance, he appeared with counsel and agreed to a preliminary hearing date eight days hence. He cannot be heard to complain of this delay under 22-2902, *supra*. Further continuance was granted for good cause shown. It follows the trial court did not err in overruling the appellant's motion to dismiss because the preliminary hearing was not held within the ten day period mentioned in the statute.

The appellant contends the trial court erred in admitting into evidence goods which were not proven to have been taken from the owner claiming loss. He also contends there was no evidence sufficient to establish that the appellant was in possession of goods recently stolen of a value of more than $50.

An employee of Bird's drug store, Lee Hankins, testified a list of the drugs stolen from the store "fairly well complied" with a list of drugs found in the appellant's suitcase. He estimated the value of these drugs to be $400. Mr. Hankins further testified that a portion of the drugs found in the appellant's suitcase, having a value of $25 to $30 had definitely come from Bird's drug store.

Another witness, Norman Shanks, testified the three Timex watches found in the trunk of the car were "of a type that we had in the case, . . ."

Although the cartons of cigarettes were never admitted into evidence, an employee of the Coad Candy Company, which services Bird's drug store, testified the cartons of cigarettes found in the trunk of the vehicle all bore tax stamps which showed they were from Coad's Cowley County trade area.

A. V. Froemming, chief of police in Winfield, Kansas, testified the appellant admitted having been in Winfield on August 29th, 30th and on the morning of August 31st.

The appellant's assertions of error on this point go to the weight of the evidence, not its admissibility. On the record here presented there was sufficient evidence presented at the trial from which the jury could find the appellant committed the crime of felony theft.

In a criminal action the function of this court on appeal is not to decide whether guilt is shown by the evidence beyond a reasonable doubt, but to ascertain whether there was, in evidence, a basis for a reasonable inference of guilt. (*State v. Kliewer*, 210 Kan. 820, 504 P. 2d 58 and cases cited therein.)

Finally, the appellant contends the verdict was contrary to law in that the only evidence against him was possession of goods alleged to have been recently stolen. He argues there is no evidence

he was in the exclusive possession, or in the joint possession of the goods with one in complicity in the crime.

The appellant acknowledges the well established rule in this jurisdiction that exclusive possession of recently stolen goods, when unexplained may be sufficient to uphold a conviction; even in the absence of corroboration. (*State v. Oswald*, 197 Kan. 251, 254, 417 P. 2d 261.) But he argues the stolen goods were not in his exclusive possession because the suitcase was in the trunk of Gene Brown's automobile.

This court stated in *State v. Sharp*, 174 Kan. 672, 675, 258 P. 2d 306,

". . . the words 'recent' and 'exclusive' are relative terms, and the contention for a literal application of their definitions cannot be sustained. . . ."

*Sharp*, was recented quoted with approval on this identical point in *State v. Ogden*, 210 Kan. 510, 502 P. 2d 654.

In the instant case the stolen goods were discovered only seven days after the theft occurred and in a suitcase the appellant admitted was his. On the record here presented we cannot say the verdict was contrary to the law.

No reversible error having been shown, the judgment of the lower court is affirmed.