No. 55,283

STATE OF KANSAS, *Appellant,* v. RANDY BRISTOR, *Appellee.*

(691 P.2d 1)

Opinion filed November 30, 1984.

*Janet M. Velazquez,* assistant county attorney, argued the cause, and *Robert T. Stephan,* attorney general, was with her on the brief for the appellant.

*Glenn I. Kerbs,* of Patton & Kerbs, of Dodge City, argued the cause and was on the briefs for the appellee.

The opinion of the court was delivered by

SCHROEDER, C.J.: This case is before the court on a Petition for Review of the decision of the Court of Appeals found at 9 Kan. App. 2d 404, 682 P.2d 122 (1984). The State appealed the trial court's pretrial order suppressing the results of the blood alcohol test (BAT) given to Randy Bristor (defendant-appellee) shortly after he was arrested for driving under the influence of alcohol. K.S.A. 1983 Supp. 8-1567. The trial court suppressed the test results on the ground the defendant was denied his constitutional right to consult with counsel prior to deciding whether to submit to the test. The Court of Appeals affirmed, holding that under the Sixth Amendment the defendant must be permitted a *reasonable* opportunity to contact counsel before deciding whether to submit to the test. We granted review.

The facts are undisputed and are set out in detail in the Court of Appeals opinion. 9 Kan. App. 2d at 404-05. We will briefly summarize them here. On the evening of July 30, 1982, defendant Bristor was stopped and arrested for DUI by a highway patrol trooper. Bristor was informed of his *Miranda* rights while at the scene of the arrest. He was then transported to the Dodge City Law Enforcement Center. Upon Bristor's arrival, the officer requested that he take a breath test pursuant to K.S.A. 8-1001. Bristor asked to be allowed to telephone his attorney before deciding whether to take the test. The officer refused, and Bristor consented to the BAT. After providing the breath sample, he was allowed to call his lawyer.

Bristor filed a pretrial motion to suppress the test results. After conducting a hearing, the trial court ordered the results of the BAT be suppressed on the ground that the defendant's consent to the test was obtained in violation of his constitutional right to counsel.

In affirming the trial court, the Court of Appeals held the defendant's Sixth Amendment right to counsel had attached because, under Kansas law, an arrest marks the initiation of the

criminal prosecution, and, also, the decision of whether to submit to a BAT is a "critical stage" of the prosecution. The Court of Appeals went on to qualify this right by holding the defendant must be afforded only a "reasonable" opportunity to contact an attorney if it can be done with "reasonable" expedition.

In his dissent, Judge John Rees reasoned that an arrest, in and of itself, does *not* mark the initiation of the criminal prosecution. He said that under both Kansas and federal caselaw, the prosecution of a DUI case does not begin until the complaint is filed. He concluded that no complaint had been filed against Bristor when the BAT was taken, and, accordingly, the Sixth Amendment right to counsel had not yet attached.

The single issue presented in this case is whether an individual arrested for driving under the influence has a Sixth Amendment right to counsel prior to submitting to the chemical blood test required by the Kansas implied consent law.

This court was recently confronted with a similar situation in *Standish v. Department of Revenue,* 235 Kan. 900, 683 P.2d 1276 (1984). In *Standish,* the defendant was arrested for DUI, given his *Miranda* warning, and then asked to submit to a BAT. The defendant said he wanted to speak with his attorney before taking the test. The police officers allowed the defendant to attempt to call his attorney, but he was unable to reach him. The defendant continued to refuse the test until he could speak with his attorney. When he later agreed to submit, the police officers declared that it was too late.

In a subsequent administrative hearing, it was determined the defendant's refusal to take the test was unreasonable and his license was suspended pursuant to K.S.A. 8-1001(c). The case was appealed to this court. The issue before us was whether a refusal to submit to a BAT may be rescinded. In addition to addressing this issue, we also considered whether the accused had a right to counsel.

"The right to drive a motor vehicle on the public streets is not a natural right but a privilege, subject to reasonable regulation in the public interest. *Agee v. Kansas Highway Commission,* 198 Kan. 173, 180, 422 P.2d 949 (1967). When a blood test is required under state law, the accused is not entitled to assert the Fifth Amendment privilege against self-incrimination. Also, the blood test does not violate the Fourth Amendment right to be free of unreasonable searches and seizures; it is a reasonable test. *Schmerber v. California,* 384 U.S. 757, 16 L.Ed.2d 908, 86 S.Ct. 1826 (1966). We conclude that when, as in Kansas, state law

deems that all drivers have given consent to chemical tests of blood or breath when arrested for driving while under the influence, and that if the person arrested refuses to submit to the test certain consequences follow, no constitutional right to consult counsel in order to determine whether to submit to the test attaches. See *Peterson v. State*, 261 N.W.2d [405] at 410 [(S.D. 1977)], and *Hoffman v. Iowa Dept. of Transp.*, 257 N.W.2d [22] at 26 [(Iowa 1977)]. If, as here, it is convenient to give the accused an opportunity to call an attorney, that procedure may be followed; but contacting an attorney or having one present at this stage of the proceedings is not an absolute right and cannot be used to delay or thwart the implied consent procedure." 235 Kan. at 904.

We went on to hold that, pursuant to *Berkemer v. McCarty*, 468 U.S. _____, 82 L.Ed.2d 317, 104 S.Ct. 3138 (1984), *Miranda* safeguards apply to anyone who is arrested for any reason, including DUI. We then held that in the future an officer arresting a person for DUI should give the following additional statement:

" 'Kansas law provides that a person who drives a motor vehicle shall be deemed to have given consent to submit to a chemical test of breath or blood, to determine the alcoholic content of the person's blood, whenever the person is arrested or taken into custody for operating a motor vehicle while under the influence of alcohol.

" 'Your right to consent or refuse to take a chemical test is not a constitutional right. You have no constitutional right to consult with an attorney as to whether or not you will take the test.' "

We went on to state:

"Also, and although not required to do so by our earlier cases, the officer could well add:

" 'If you refuse to take the test, the fact of your refusal can be used against you in any trial for driving under the influence of alcohol.

" 'Also, if you refuse to take the test, your driver's license will probably be suspended for a period of not less than 120 days and not more than one year.' " 235 Kan. at 905.

We concluded that the defendant in *Standish* was confused by the *Miranda* warning into believing he did have the right to counsel and, therefore, his refusal was reasonable. 235 Kan. at 905.

While *Standish* did involve the "right to counsel" issue, it arose in a context entirely different than the case now before us. *Standish* arose in a license revocation proceeding, which is civil in nature. The case we are now considering arose in a criminal proceeding. We note at the point in time when a driver makes his decision regarding whether he will submit to the BAT there is no

civil/criminal distinction. It is only after the decision is made that the proceeding divides into its civil and criminal aspects: civil, if testing is refused; criminal, if testing is consented to; or both, if testing is refused, but the prosecutor has enough evidence to proceed with prosecution and elects to do so. But despite this initial unity of all DUI cases, the civil/criminal distinction in the context of the proceeding plays an important role in our review because the Sixth Amendment safeguards apply only to the criminal defendant. See *Robertson v. State ex rel. Lester,* 501 P.2d 1099, 1103 (Okla. 1972). Our holding in *Standish,* that there is no right to counsel, was not based on the Sixth Amendment since that case was heard in the civil context; therefore, *Standish* is not dispositive of the instant case, which presents an issue of first impression in Kansas. It must be noted, if we decide there is a Sixth Amendment right to consult counsel before submitting to a BAT, this right attaches to all persons arrested for DUI regardless of whether the arrest later results in a civil or criminal proceeding. See *Flynt v. State,* 507 P.2d 586 (Okla. Crim. 1973).

The Sixth Amendment to the U.S. Constitution provides: "In all criminal prosecutions, the accused shall . . . have the Assistance of Counsel for his defence." As explained in *Powell v. Alabama,* 287 U.S. 45, 77 L.Ed. 158, 53 S.Ct. 55 (1932), the purpose of the Sixth Amendment right to counsel is to protect the rights of laymen, who are assumed to be unfamiliar with the intricacies of legal proceedings, by providing them with assistance of counsel. 287 U.S. at 71. In determining the stage of the criminal prosecution when the assistance of counsel is constitutionally mandated, the court looks to the detriment which the defendant would sustain if forced to undergo a particular stage of the proceeding without counsel; this process of determination has been labeled the critical stage analysis. See *United States v. Wade,* 388 U.S. 218, 18 L.Ed.2d 1149, 87 S.Ct. 1926 (1967).

Use of the critical stage analysis has enabled the Supreme Court to extend the applicability of the Sixth Amendment right to counsel beyond the confines of the trial itself, to various pretrial confrontations. See, *e.g., Moore v. Illinois,* 434 U.S. 220, 54 L.Ed.2d 424, 98 S.Ct. 458 (1977) (identification of the defendant at a preliminary hearing - a critical stage); *Coleman v. Alabama,* 399 U.S. 1, 26 L.Ed.2d 387, 90 S.Ct. 1999 (1970) (preliminary hearing - a critical stage); *Mempa v. Rhay,* 389 U.S. 128, 19

L.Ed.2d 336, 88 S.Ct. 254 (1967) (sentencing - a critical stage); *United States v. Wade,* 388 U.S. 218 (pretrial lineup - a critical stage); *Hamilton v. Alabama,* 368 U.S. 52, 7 L.Ed.2d 114, 82 S.Ct. 157 (1961) (arraignment - a critical stage). But see *United States v. Ash,* 413 U.S. 300, 37 L.Ed.2d 619, 93 S.Ct. 2568 (1973) (presentation of a photographic display - not a critical stage); *Gilbert v. California,* 388 U.S. 263, 18 L.Ed.2d 1178, 87 S.Ct. 1951 (1967) (the taking of defendant's handwriting exemplar - not a critical stage).

In determining whether a pretrial confrontation is a critical stage, the Supreme Court focuses upon two factors. First, the court considers whether the presence of counsel is "necessary to preserve the defendant's basic right to a fair trial as affected by his right meaningfully to cross-examine the witnesses against him and to have effective assistance of counsel at the trial itself." *United States v. Wade,* 388 U.S. at 227. Second, the court analyzes whether "potential substantial prejudice" to the defendant's right inheres in a particular confrontation and whether the presence of counsel would help avoid such prejudice. 388 U.S. at 227.

The decision whether to take or refuse a BAT is "critical" in the sense that it can have major consequences for a suspect. See *State v. Fitzsimmons,* 93 Wash. 2d 436, 610 P.2d 893 (1980). To a driver whose livelihood does not depend on his license, the decreased possibility of criminal conviction may be worth the temporary revocation that will result from refusal. *Prideaux v. State, Dept. of Public Safety,* 310 Minn. 405, 412, 247 N.W.2d 385 (1976). If a driver is involved in a serious or fatal accident, he may face more serious civil or criminal proceedings in which the test results may be important evidence against him. 310 Minn. at 412. Furthermore, at the time the decision is to be made, the advice of counsel can be useful because a driver may be dazed as a result of the alcohol, an accident, or both.

While the decision is "critical" to each individual who is arrested for DUI, we do not believe it is "critical" in the constitutional sense. The United States Supreme Court has not found a right to counsel attaches when there is merely an important decision to be made. Nor has the court found a right to counsel for every person from whom evidence is sought during the course of an investigation. Not every evidence-gathering pro-

cedure is a critical stage. See *United States v. Wade,* 388 U.S. at 227; *United States v. Ash,* 413 U.S. at 315.

The very purpose of the implied consent law (K.S.A. 8-1001) is to coerce a motorist suspected of driving under the influence to "consent" to chemical testing, thereby allowing scientific evidence of his blood alcohol content to be used against him in a subsequent prosecution for that offense. *Prideaux v. State, Dept. of Public Safety,* 310 Minn. at 409-10. For drivers who refuse, the purpose of the statute is to provide an effective means short of physical force to overcome the refusal. *State v. Garner,* 227 Kan. 566, 571-72, 608 P.2d 1321 (1980). The nonphysical means consist of the statutory penalties of license revocation and the admission into evidence in a DUI proceeding of the fact of the refusal. K.S.A. 8-1001(c). Under *Standish,* the arrested defendant is to be informed of these consequences. This is a departure from our earliest cases. See, *e.g., Hazlett v. Motor Vehicle Department,* 195 Kan. 439, 442, 407 P.2d 551 (1965); *City of Shawnee v. Gruss,* 2 Kan. App. 2d 131, 134, 576 P.2d 239, *rev. denied* 224 Kan. 843 (1978). Thus, the consent envisioned by the statute is to be implied and if submission is not forthcoming it is to be coerced by knowledge and fear of adverse consequences.

It is also relevant to note that in *State v. Garner,* 227 Kan. at 572, we held that a BAT can be lawfully given to a person who is unconscious - the reason being that he has already "impliedly consented" and is not in a position to physically resist the test. Since the implied consent statute and the cases which interpret it indicate there is no real decision to be made, we cannot say this is a "critical stage." Additionally, in light of the Supreme Court's decision in *Kirby v. Illinois,* 406 U.S. 682, 32 L.Ed.2d 411, 92 S.Ct. 1877 (1972), we are left with no doubt that the right to counsel has not yet attached when the BAT is administered.

The United States Supreme Court set a limit on the critical stage concept in the *Kirby* decision. In a plurality opinion written by Justice Stewart it was held that the Sixth Amendment right to counsel may attach to pretrial confrontations or proceedings, but only after the State commits itself to the prosecution of the accused. The court found that the State commits itself to a criminal prosecution at the initiation of adversary judicial proceedings, at which point the suspect is "faced with the prosecutorial forces of organized society, and immersed in the intricacies

of substantive and procedural criminal law." 406 U.S. at 689. The court emphasized this point "marks the commencement of the 'criminal prosecutions' to which alone the explicit guarantees of the Sixth Amendment are applicable." 406 U.S. at 690.

The Supreme Court has not defined precisely when a prosecution begins. The plurality in *Kirby* indicated that adversary judicial criminal proceedings are initiated by way of "formal charge, preliminary hearing, indictment, information, or arraignment." 406 U.S. at 689. In *Brewer v. Williams*, 430 U.S. 387, 51 L.Ed.2d 424, 97 S.Ct. 1232, *reh. denied* 431 U.S. 925 (1977), the court found a criminal prosecution had begun when an arrest warrant had been issued, the accused had been arraigned on that warrant before a judge, and the accused had been committed by the court to confinement in jail. 430 U.S. at 399. However, *Brewer* did not answer when a criminal prosecution begins, because the court did not say whether one of these factors would have been sufficient or whether the combination of several or all of them triggered the right to counsel. Relying on *Kirby,* an Indiana court found that a driver had no right to consult with an attorney before deciding whether to take a breathalyzer test because the Sixth Amendment right to counsel did not attach "until a judicial adversary proceeding had been initiated against him, that is, after the filing of an affidavit or indictment charging him with a crime." *Davis v. State,* 174 Ind. App. 433, 435-36, 367 N.E.2d 1163 (1977). Accord *State ex rel. Webb v. City Court of City of Tucson,* 25 Ariz. App. 214, 542 P.2d 407 (1975); *State v. Petkus,* 110 N.H. 394, 269 A.2d 123 (1970), *cert. denied* 402 U.S. 932 (1971); *Flynt v. State,* 507 P.2d 586 (Okla. Crim. 1973); *State v. Newton,* 291 Or. 788, 636 P.2d 393 (1981).

The *Kirby* rule has previously been adopted in Kansas. See *State v. Irving,* 231 Kan. 258, 262, 644 P.2d 389 (1982); *State v. Estes,* 216 Kan. 382, 385-86, 532 P.2d 1283 (1975); *State v. Jackson,* 212 Kan. 473, 473-74, 510 P.2d 1219 (1973); *State v. McCollum,* 211 Kan. 631, 637-38, 507 P.2d 196 (1973); *State v. Anderson,* 211 Kan. 148, 149, 505 P.2d 691 (1973); *State v. McConico,* 4 Kan. App. 2d 420, 426, 607 P.2d 93 (1980). The Court of Appeals in this case relied on the use of the word "arrested" in *Irving* and *Estes* as authority that, in Kansas, an arrest is enough to begin the prosecutorial process. We cannot agree that either of those cases stands for that result. In both

*Estes* and *Irving*, this court cited *Kirby* to support the proposition that the Sixth Amendment right to counsel had not attached because adversary judicial criminal proceedings had not been initiated. In *Irving*, we said such proceedings had not begun in the absence of a person "being charged, arrested or indicted." 231 Kan. at 262. In *Estes* we said the right to counsel had not attached because "[a]t the time of the physical lineup the appellant by his own testimony admits he was not under arrest on charges upon which this appeal was taken." 216 Kan. at 386. Two prior Kansas cases were cited with approval in *Estes*, namely, *State v. Anderson*, 211 Kan. 148, and *State v. McCollum* 211 Kan. 631. In those cases it was held that there is no right to counsel in a *post-arrest*, pre-indictment lineup or photographic display situation. Taken in context, we believe the words "not under arrest on charges" in *Estes* meant only that there was no criminal prosecution as an incident to which the defendant was under arrest. *Estes* does not stand for the proposition that an arrest, standing alone, would have been sufficient to trigger the right to counsel.

Likewise, in *Irving* no criminal prosecution had begun. Again, the fact that there had not been an arrest was not determinative of the outcome of the case. This court did not hold that an arrest, in and of itself, would have been enough to trigger the Sixth Amendment right to counsel. Accordingly, we hold an arrest for DUI does not, in itself, initiate adversary judicial criminal proceedings; it is the subsequent filing of the complaint which triggers the initiation of the criminal proceedings.

In this case, there is some discrepancy between the Court of Appeals majority and dissent as to whether a complaint had been filed against Bristor when the BAT was administered. The majority found the issuance of a ticket the equivalent of a complaint. 9 Kan. App. 2d at 406. The dissent, relying on K.S.A. 8-2108, found a ticket does not become a complaint until it is filed with the court. 9 Kan. App. 2d at 420. K.S.A. 8-2108 provides, ". . . such citation [the ticket] when filed with a court having jurisdiction shall be deemed to be a lawful complaint for the purpose of prosecution." Under this statute, Bristor's ticket did not become a complaint until it was filed with the court three days after his arrest.

It is not until after the test has been administered that the State

commits itself to the criminal prosecution. Therefore, we conclude that the criminal prosecution had not begun when Bristor was asked to submit to a BAT. Since the criminal prosecution had not begun, and since it was not a "critical stage," it necessarily follows he had no Sixth Amendment right to consult counsel before taking the BAT. Accordingly, we hold that when a suspect is arrested for DUI, there is no Sixth Amendment right to consult with counsel before submitting to or refusing a BAT.

We reiterate our holding in *Standish* that an officer who arrests a person for DUI should give a statement, in addition to the *Miranda* warnings, that the defendant has no constitutional right to consult with counsel in deciding whether to refuse the BAT. By giving such a statement, needless confusion in the matter will be avoided. Annot., Chemical Sobriety Test-Right to Counsel, 97 A.L.R.3d 852.

Since no Sixth Amendment right to counsel exists at the time a suspect must consent to or refuse the BAT, the trial court erred by suppressing the results of Bristor's BAT.

The judgment of the trial court suppressing the results of the blood alcohol test given to the defendant is reversed, the decision of the Court of Appeals upholding the action of the trial court is reversed, and the case is remanded to the trial court for further proceedings.

HOLMES, J., dissenting.